# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| United States of America, | Criminal No. 14-303(2) (DWF/BRT) |
| Plaintiff, | |
| v. | **MEMORANDUM OPINION AND ORDER** |
| Milton Eugene Ingram, | |
| Defendant. | |

Milton Eugene Ingram, Defendant, *Pro Se*.

Andrew S. Dunne and Jeffrey S. Paulsen, Assistant United States Attorneys, United States Attorney's Office, counsel for the Government.

# INTRODUCTION

This matter is before the Court on Defendant Milton Eugene Ingram's ("Ingram") second *pro se* Motion for Compassionate Release in light of the COVID-19 pandemic.[1]

---

[1] Ingram also filed *pro se* motions to appoint counsel (Doc. No. 669), supplement the record (Doc. No. 690), and for the Government to respond to his Motion (Doc. Nos. 696, 697). The Court respectfully denies Ingram's request for appointment of counsel. *United States v. Craycraft*, 167 F.3d 451, 455 (8th Cir. 1999) ("[T]here is no general right to counsel in post-conviction habeas proceedings for criminal defendants."). The Court grants Ingram's motion to supplement the record and denies his motions for the Government to respond as moot because the Government timely responded to his Motion on March 29, 2021. (*See* Doc. Nos. 693, 694).

(Doc. No. 668 ("Motion").)  The Government opposes Ingram's Motion.  (Doc. No. 693).[2]

## BACKGROUND

The factual background for the above-entitled matter was clearly and precisely set forth in the Court's Order dated June 11, 2020 denying Ingram's first *pro se* motion for compassionate release and is incorporated by reference herein.  (*See* Doc. No. 623 ("First Denial").)  In short, Ingram is serving a 10-year sentence after pleading guilty to one count of conspiracy to distribute heroin in violation of 21 U.S.C. §§ 846 and 841(b)(1)(A).  He is currently incarcerated at Milan FCI in Milan, Michigan with an expected release date of May 12, 2023.  Federal Bureau of Prisons, Inmate Locator, *https://www.bop.gov/inmateloc/* (last visited May 6, 2021).

Milan FCI reports 1 active COVID-19 case among its inmates and 3 among its staff and 251 inmates and 79 staff who have recovered from the virus.  Federal Bureau of Prisons, COVID-19: Coronavirus, *https://www.bop.gov/coronavirus/* (last visited May 6, 2021).  Sadly, 4 inmates at Milan FCI have died from COVID-19.  To date, the Bureau of Prisons ("BOP") has performed 862 tests for COVID-19 at Milan FCI with 245 of them positive for the virus.  *Id.*  Moreover, 150 staff and 217 inmates at the facility have been fully inoculated against COVID-19.  *Id.*

---

[2]   The Court also received and considered Ingram's supplement to the record (Doc. No. 691), the arguments and additional information supporting his Motion in two supplemental pleadings (Doc. Nos. 696, 697), a letter from his mother in support of release (Doc. No. 674), and Ingram's own letter to the Court (Doc. No. 698 ("Letter")).  Ingram's response to the Government's opposition was due April 12, 2021.  (Doc. No. 694.)  He did not respond.

Ingram filed his first *pro se* motion for compassionate on April 29, 2020 citing an erectile dysfunction due to a recent surgery. (Doc. No. 614 ("First Motion").) The Court found that "Ingram's circumstances [did] not meet the demanding standard for compassionate release," and denied his request. (First Denial at 5.) Thereafter, Ingram sent two separate letters to the Court seeking reconsideration of its First Denial. (Doc. Nos. 653, 654 (collectively ("First Request").) In one of the letters, Ingram asserted that, "after being dizzy and short of breath," he passed out on September 16, 2020 and was transported to the hospital.[3] (Doc. No. 654 at 1.) The Court denied Ingram's First Request in part because it concluded that Ingram's updated information did not alter its conclusion that Ingram's medical conditions were insufficiently extraordinary and compelling to warrant compassionate release.[4] (Doc. No. 655 ("Second Denial") at 3.)

In January 2021, Ingram filed a second motion for reconsideration of the Court's First Denial. (Doc. No. 666 ("Second Request").) This time, he asserted that he suffers from an acute respiratory disorder that requires him to use inhalers, and also suffers from depression and anxiety. (Second Request at 1). The Court denied his Second Request on February 19, 2021. (Doc. No. 671 ("Third Denial").) The Court stated:

> The Court once again finds that Ingram's updated information does not alter its conclusion that Ingram has not presented "extraordinary and compelling" reasons to warrant compassionate release. There is no

---

[3] In Ingram's other letter, he stated that he was diagnosed with an infection in his testicles. (Doc. No. 653 at 1).

[4] The Court's Second Denial was also based on procedural defects. (*See* Second Denial at 2-3.)

> indication that any of Ingram's medical conditions, alone or in
> combination, diminish his ability to provide self-care in prison. Moreover,
> the record reflects that the Bureau of Prisons has provided Ingram
> appropriate medical care.

(Third Denial at 2.)

In his current Motion, Ingram asserts that he suffers from asthma. (Motion at 11; *see also* Doc. No. 691 ("Medical Records") at 6-7.) In subsequent filings, he reiterates that he suffers from anxiety, depression, and asserts that he also suffers from a vitamin deficiency. (Doc. Nos. 696, 697). He also expresses generalized anxiety related to the presence of COVID-19 in his facility and his belief that Milan FCI is not taking appropriate steps to mitigate its spread. (Motion at 4-10). In a Letter to the Court, Ingram expresses remorse for his offense conduct, asserts that he has been appropriately rehabilitated, and states a strong desire to help care and provide for his family. (Letter at 1-3.)

## DISCUSSION

The First Step Act allows the Court to reduce a defendant's term of imprisonment if it finds that "extraordinary and compelling reasons warrant such a reduction." 18 U.S.C. § 3582(c)(1)(A)(i). Such "extraordinary and compelling reasons" include (1) medical conditions which diminish the ability of the defendant to provide self-care in prison and from which he or she is not expected to recover, (2) age-related deterioration, (3) family circumstances, and (4) other extraordinary and compelling reasons that exist

either separately or in combination with the previously described categories. U.S.S.G. § 1B1.13 ("Sent'g Comm'n Pol'y Statement" or "Statement"), cmt. n.1(a)(ii).[5]

If "extraordinary and compelling reasons" exist, a reduction of sentence is appropriate when "the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)" and "the reduction is consistent with [the Sentencing Commission's] policy statement." Statement. The Court must also consider the sentencing factors set forth in 18 U.S.C. § 3553(a) "to the extent they are applicable." 18 U.S.C. § 3582(c)(1)(A).

Notwithstanding, a defendant may move for a sentence reduction only after complying with an exhaustion requirement. 18 U.S.C. § 3582(c)(1)(A). Specifically, a defendant may move for a sentence reduction "[1] after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on

---

[5] While the Statement refers only to motions filed by the Director of the BOP, the Court construes the statutory command pursuant to § 3582(c)(1)(A)(ii) that any sentence reduction be "consistent with applicable policy statements issued by the Sentencing Commission" to mean that the Statement also applies to motions filed by defendants. The Court acknowledges that there is ongoing litigation surrounding this issue and that other courts have found that the Statement does not apply to motions initiated by a defendant. *See United States v. McCoy*, 981 F.3d 271, 281 (4th Cir. 2020); *United States v. Brooker*, 976 F.3d 228 at 234 (2d Cir. 2020); *United States v. Jones*, 980 F.3d 1098 at 1110-11 (6th Cir. 2020); *United States v. Gunn*, 980 F.3d 1178, 1180 (7th Cir. 2020). The Court also notes that the Eighth Circuit has not yet considered the issue. Here, even if the Court were to exercise broader discretion, it would still find that Ingram's circumstances do not meet the demanding standard for compassionate release.

the defendant's behalf or [2] the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier . . . ."[6] *Id.*

The record reflects that Ingram requested compassionate release from the warden at Milan FCI on December 14, 2020. (Doc. No. 668-1 at 9.) Because more than 30 days have passed without a response, the Court finds that Ingram's Motion is ripe for review.

After a careful review of Ingram's Motion and other documentation, including his Medical Records and supplemental pleadings, the Court once again finds that his circumstances do not meet the demanding standard necessary for compassionate release. While the Centers for Disease Control and Prevention ("CDC") recognizes that moderate to severe asthma can increase a person's risk of severe illness from COVID-19, the Court finds no indication that Ingram's asthma, alone or in combination with the presence of COVID-19 at Milan FCI or any other medical condition, has diminished or will diminish Ingram's ability to provide self-care while in prison.[7] *See* Centers for Disease Control

---

[6] Although judicially created exhaustion requirements may sometimes be excused, no exception applies to a statutory command such as that presented in Section 3582(c)(1)(A). *See Ross v. Blake*, 136 S. Ct. 1850, 855-57 (2016) (rejecting judicially created "special circumstances" exception to the exhaustion requirement unambiguously stated in the Prison Litigation Reform Act of 1995).

[7] Ingram's Medical Records do not indicate the severity of his asthma. (*See* Medical Records at 3, 6-7; *see also* Doc. No. 668-1 at 2-3.) Even allowing that his asthma is moderate to severe, the Court still finds no indication that the condition has limited or will limit his ability to provide self-care while in prison. Moreover, Ingram's Medical Records reflect that his condition is being monitored. (*See generally* Medical Records.) The CDC does not recognize Ingram's other medical conditions as factors that increase his risk of severe illness from COVID-19. *See* Centers for Disease Control and Prevention, Coronavirus Disease: People with Certain Medical Conditions, *https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html* (last visited May 6, 2021).

and Prevention, Coronavirus Disease: People with Certain Medical Conditions, *https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html* (last visited May 6, 2021).

The Court also finds that Ingram's generalized fear of contracting COVID-19 in a prison setting is an insufficient basis for compassionate release because it is entirely speculative. *See, e.g.*, *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020) (a generalized fear of contracting COVID-19 is an insufficiently extraordinary and compelling reason to warrant release); *United States v. Eberhart*, 448 F. Supp. 3d 1086, 1090 (N.D. Cal. 2020) (same); *see also United States v. Garcia*, Cr. No. 16-333, 2020 WL 4018223, at *2 (D. Minn. July 16, 2020) (declining to grant compassionate release based on possibility of severe reinfection). Moreover, any risk of contracting COVID-19 is increasingly mitigated the BOP's initiative to vaccinate inmates and staff in its facilities. *See* Federal Bureau of Prisons, COVID-19: Coronavirus, *https://www.bop.gov/coronavirus/* (last visited May 6, 2021). To date, the BOP has administered over 160,000 doses of the vaccine and 150 staff and 217 inmates at Milan FCI are fully inoculated against COVID-19. *Id.*

It is truly unfortunate that so many inmates at Milan FCI contracted COVID-19 and that 4 inmates there died from the virus. It is promising that the facility currently has just 1 active case of COVID-19 among its inmates and 3 among its staff. Federal Bureau of Prisons, COVID-19: Coronavirus, *https://www.bop.gov/coronavirus/* (last visited May 6, 2021). Moreover, Milan FCI also continues to employ measures to mitigate the

spread of COVID-19, including actively vaccinating its inmate and staff.[8]  Sadly, until the vaccine is more widely available, some level of continued spread is inevitable.  In spite of the risk, the BOP must continue to carry out its charge to incarcerate sentenced criminals to protect the public and any release must be balanced against the danger it poses to society.

The Court recognizes that Ingram strongly desires to be released from prison; however, his circumstances, even with his updated information, still fail to satisfy the high bar necessary for compassionate release.[9]  The Court commends him for his commitment to rehabilitation and encourages him to maintain the effort so that he may be the best version of himself when release is appropriate.

---

[8]     Effective March 13, 2020, the BOP required all of its facilities to implement a set of measures "to mitigate the spread of COVID-19" and "to ensure the continued effective operation of the federal prison system."  *See* Federal Bureau of Prisons, BOP COVID-19 Action Plan, *https://www.bop.gov/resources/news/20200313_covid-19.jsp* (last visited May 6, 2021).  Those steps include limiting visits and internal movement, increased hygiene measures, screening of both staff and inmates and virtual legal visits.  *See* Federal Bureau of Prisons, BOP Modified Operations, *https://www.bop.gov/coronavirus/covid19_status.jsp* (last visited May 6, 2021).  The BOP periodically updates its Plan and is currently in Phase Nine.  *Federal Bureau of Prisons*, Coronavirus (COVID-19) Phase Nine Action Plan, *https://prisonology.com/wp-content/uploads/2020/08/COVID-19-Phase-9-COVID-Action-Plan.pdf* (last visited May 6, 2021).

The BOP is also exercising greater authority to designate inmates for home confinement.  Federal Bureau of Prisons, COVID-19: Coronavirus, *https://www.bop.gov/coronavirus/* (last visited May 6, 2021).  Since March 2020, the BOP has transferred more than 25,000 inmates to home confinement.  *Id*.

[9]     Because the Court finds that Ingram fails to present extraordinary and compelling circumstances, it need not address the sentencing factors set forth in 18 U.S.C. § 3553(a) or whether he poses a danger to the safety of the community.

## CONCLUSION

For the reasons set forth above, the Court finds that Ingram fails to present an extraordinary and compelling reason to warrant compassionate release. Accordingly, his Motion is respectfully denied.

## ORDER

Based upon the foregoing, and on all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that Defendant Milton Eugene Ingram's *pro se* motion for compassionate release in light of the COVID-19 pandemic (Doc. No. [668]) and his motion for appointment of counsel (Doc. No. [669]) are respectfully **DENIED**; his motion to supplement the record (Doc. No. [690]) is **GRANTED**; and his motions for the government to respond (Doc. Nos. [696], [697]) are **DENIED AS MOOT**.

Date: May 7, 2021                          s/Donovan W. Frank
                                                               DONOVAN W. FRANK
                                                               United States District Judge